```
         IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

            MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


ANTHONY T. LEE, et al.,         )
                                )
      Plaintiffs,               )
                                )
UNITED STATES OF AMERICA,       )
                                )
      Plaintiff-Intervenor      )
      and Amicus Curiae,        )
                                )
NATIONAL EDUCATION              )   CIVIL ACTION NO.
ASSOCIATION, INC.,              )    2:70cv3098-T
                                )        (WO)
      Plaintiff-Intervenor,     )
                                )
      v.                        )
                                )
AUTAUGA COUNTY BOARD OF         )
EDUCATION, et al.               )
                                )
      Defendants.               )
```

                             OPINION

      Back in the 1960s, the plaintiffs (a class of black

students and their parents) filed this lawsuit against the

defendants (the Autauga County Board of Education, its

members, the Autauga County School Superintendent, the

Alabama State Board of Education, its members, the State

Superintendent of Education, and the Governor of Alabama)

seeking relief from race discrimination in the operation of a <u>de jure</u> segregated school system for Autauga County, Alabama.  On April 28, 2005, the Autauga County Board of Education and its members and superintendent moved for declaration of full unitary status and termination of this litigation.  Based on the evidence presented, the court concludes that the school district's motion should be granted and this litigation terminated as to the Autauga County Board of Education and its members and superintendent.

## I. BACKGROUND

### A. Earlier Litigation

This case was originally part of the <u>Lee v. Macon County</u> litigation, a statewide class action that began in 1963 as a challenge to the State of Alabama's operation of a racially segregated school system.  The United States was added as a plaintiff-intervenor and amicus curiae.  <u>Lee v. Macon County Bd. of Educ.</u>, 267 F. Supp. 458, 460 (M.D. Ala. 1967), <u>aff'd sub nom.</u>, <u>Wallace v. United States</u>, 389 U.S.

215, 88 S.Ct. 415 (1967).  The procedural history of the early litigation of this case is set forth at length in <u>Lee v. Autauga County Board of Education</u>, 2004 WL 1699068, at *1-2 (M.D. Ala. 2004).

In October 1995, the Autauga County Board of Education petitioned for a declaration of unitary status.  The subsequent discovery, mediation, and extended negotiations between the parties culminated in a consent order, which the court adopted on June 18, 1997.  In that consent order, the court specified those areas of operation in which the school district was unitary and those in which further remedial action was required.  Many of the fields addressed in the consent order are considered "<u>Green</u> factors," those areas of a school district's operation traditionally considered indicia of a segregated (or not) system.  <u>Green v. Sch. Bd. of New Kent County, Va.</u>, 391 U.S. 430, 88 S.Ct. 1689 (1968). The consent order also addressed several issues that fall under the broader ambit of "quality of education" issues first recognized by the Supreme Court in <u>Freeman v. Pitts</u>, 503 U.S. 467, 492-93, 112 S.Ct. 1430, 1446-47 (1992).  The

3

court decreed that the Autauga County school system had achieved unitary status in the areas of transportation, physical facilities, discipline, and equity in salary supplements; injunctions or portions thereof pertaining to these areas were dissolved, returning control of these functions to the Autauga County Board of Education.  The consent order also provided a roadmap for the school district's attainment of unitary status in those areas in which it was not then unitary:  faculty and staff (assignment, recruitment, hiring, and promotion), curriculum, extracurricular activities, student assignment, special programs, special education, drop-out intervention, advanced programs, majority-to-minority transfers, and student achievement.

### B. Recent Activity

Having operated under the 1997 consent order for several years, the Autauga County Board of Education renewed its motion for a declaration of unitary status and dismissal of this lawsuit on September 30, 2002.  This motion prompted an

4

exchange of information between the parties and a series of court-ordered mediation sessions before a magistrate judge, and ultimately resulted in the parties' agreement that the school district had satisfied the requirements of the 1997 consent order with respect to the issues of drop-out intervention, special education, majority-to-minority transfers, special programs, and extracurricular activities.

On July 14, 2004, after proper notice of the motion to all plaintiff class members, the court held a fairness hearing on these issues, and on July 30, 2004, the court, based on the evidence received, granted the school board's motion for partial unitary status, dissolving federal judicial supervision over special programs, extracurricular activities, dropout intervention, special education, and majority-to-minority transfers, and returning control of those areas to the local authority. <u>Lee v. Autauga County Bd. of Educ.</u>, 2004 WL 1699068, at *8 (M.D. Ala. 2004). The court declared that the Autauga County school system had achieved unitary status in all local issues except faculty

and staff, parity in curriculum, and student assignments. Id.

Shortly thereafter, the parties reached an agreement on student assignment, wherein the board vowed to maintain the high school grades at the Autaugaville School, subject to certain limitations, and the plaintiffs withdrew their opposition to a declaration of unitary status.  The board moved for unitary status on this issue, and, following proper notice to all plaintiff class members, the court held a fairness hearing on October 13, 2004.  On October 19, 2004, the court, based on the evidence received, granted the school board's motion for unitary status on the issue of student assignment.  Lee v. Autauga County Bd. of Educ., 2004 WL 2359667, at *6-7 (M.D. Ala. 2004).

Meanwhile, as a result of the parties' mediation before the magistrate judge, the plaintiff parties and school board reached agreements for further relief on the faculty-and-staff and parity-in-curriculum issues, in which the board committed to making several additional improvements and the plaintiffs agreed to withdraw opposition to the board's

motion for unitary status at a predetermined future time.
Specifically, as to the faculty-and-staff issue, the board
committed to notify several specific predominately black
colleges and universities of certified position openings;
post the vacancy notices on the board's website, at several
school locations, and with several statewide placement
services; contact surrounding school districts for
referrals; and send the notices to private plaintiff's
counsel.  The board also agreed to send representatives,
including an African-American representative, to the career
days of several specific predominately black colleges and
universities; establish internship opportunities with
predominately black teacher colleges in Alabama; advertise
teacher openings on local radio and television stations with
established African-American listener/viewerships; and
ensure that interview panels were composed of at least 30 %
African-American representation.   The board agreed to
provide monthly updates on teacher personnel actions,
including hires, non-renewals, resignations, and
retirements, and plaintiffs agreed to respond with any

7

concerns within 15 days of receiving the reports.   In exchange for the board's successful compliance with these terms, the plaintiff parties agreed to withdraw any opposition to a declaration of unitary status on this element at the end of the 2004-2005 school year.   The court approved the parties' agreement on April 9, 2004.

In the area of parity in curriculum, the board committed to several programs intended to address the underachievement of students at the predominately African-American Autaugaville School.   The agreement obligated the board to implement a daily tutoring program, expand the school's SAT-10 examination tutorials, continue the Alabama Reading Initiative program, continue the Alabama High School Graduation Exam preparation, and provide semi-annual reports demonstrating its compliance with these requirements.   The board also was required to continue its "At-Risk Plan," composed of several programs aimed at meeting the needs of the entire at-risk student population at Autaugaville; a Title I School-wide Improvement Plan; an Academic Improvement Plan; and its Distance Learning Technology.

8

Moreover, as a result of earlier mediation, the board had agreed to provide the Autaugaville School with a full-time staff person responsible for in-school suspensions, a part-time Title I curriculum program specialist, and approximately $3,000 worth of computer software and enhancements.  For their part, the plaintiff parties agreed to waive objection to unitary status on this issue one year from the date the agreement was adopted by the court, so long as the board implemented and continued these remedies. The court approved this agreement on April 9, 2004.

On April 28, 2005, the board moved for a declaration of full unitary status and dismissal of this lawsuit.  The court required the school board to give all plaintiff class members appropriate notice of the motion as well as procedures for registering objections.  After the court approved the notice form, the board arranged to have published, in the local newspaper over a three-week time period, notice of the proposed termination of judicial oversight and the date of the fairness hearing; the notice also provided procedures for class members and interested

persons to file comments and objections with the court regarding the proposed declaration of unitary status.  Forms for objections and comments were made available in numerous public locations.   In addition to the published notice, copies of the school board's motion for unitary status and the board's annual reports were made available at the school board office.  Notice forms along with forms for objections and comments were sent home with every student enrolled in the Autauga County School System.  One written objection was filed.

On June 27, 2005, the court held a fairness hearing on the motion for declaration of unitary status on the remaining issues in this case.  One oral objection was made during the hearing.  The court concludes that the Autauga County Board of Education complied with the directives of the court in providing adequate notice of the proposed dismissal to class members as well as to the community. Fed. R. Civ. P. 23(e).

10

## C. School District Profile

The Autauga County School District operates four attendance zones: Autaugaville in the southwest quadrant of the county, Billingsley in the northwest quadrant, Marbury in the northeast quadrant, and Prattville in the southeast quadrant.   The Autaugaville, Billingsley, and Marbury quadrants are rural areas, while the Prattville zone contains the City of Prattville, a growing suburb of the City of Montgomery, Alabama.   Among the four attendance zones, Autaugaville is and has been the only predominately African-American zone.   The other zones are predominately white.

The school system operates eleven schools (and a small disciplinary center and technology center): seven schools in the Prattville zone, a K-12 school in the Autaugaville zone, a K-12 school in the Billingsley zone, and an elementary school and high school in the Marbury zone.   The system enrolls approximately 8,800 students, 23% of whom are African-American.   The student population enrolled at the Autaugaville School is 98% African-American.

11

Overall, 22% of the district's faculty is African-American.  The breakdown of African-American faculty at each district school as of May 2005 was as follows:

| School | % black teachers |
|--------|------------------|
| Prattville Kindergarten | 21 % |
| Prattville Primary | 20 % |
| Prattville Elementary | 22 % |
| Prattville Intermediate | 21 % |
| Daniel Pratt Elementary | 21 % |
| Prattville Jr. High | 22 % |
| Prattville High | 20 % |
| Pine Level Elementary | 20 % |
| Marbury | 21 % |
| Billingsley | 16 % |
| Autaugaville | 42 % |
| TOTAL: | 22 % |

## II.  DISCUSSION

### A.  Legal Standard

It has long been recognized that the goal of a school desegregation case is to convert promptly from a _de jure_ segregated school system to a system without "white" schools

12

or "black" schools, but just schools.  <u>Green v. County Sch.</u>

<u>Bd. Of New Kent County, Va.</u>, 391 U.S. 430, 442, 88 S.Ct.

1689, 1696 (1968).  The success of this effort leads to the

ultimate aim of returning control of the school system to

the local school board since "local autonomy of school

districts is a vital national tradition."  <u>Freeman v. Pitts</u>,

503 U.S. 467, 490, 112 S.Ct. 1430, 1445 (1992) (quoting

<u>Dayton Bd. of Educ. v. Brinkman</u>, 433 U.S. 406, 410, 97 S.Ct.

2766, 2770 (1977)).  Returning schools to the control of

local authorities "at the earliest practicable date is

essential to restore their true accountability in our

governmental system."  <u>Id</u>.

The ultimate inquiry concerning whether a school

district operating under a school desegregation order to

dismantle a <u>de jure</u> segregated school system should be

declared unitary is whether the school district has complied

in good faith with the desegregation decree, and whether the

vestiges of prior <u>de jure</u> segregation have been eliminated

to the extent practicable.  <u>NAACP, Jacksonville Branch v.</u>

<u>Duval County Sch.</u>, 273 F.3d 960, 966 (11th Cir. 2001)

(citing Missouri v. Jenkins, 515 U.S. 70, 88, 115 S.Ct. 2038, 2049 (1995), and quoting Freeman v. Pitts, 503 U.S. 467, 492, 112 S.Ct. 1430, 1446 (1992)).   The good-faith component has two parts.   A school district must show not only past good-faith compliance, but also a good-faith commitment to the future operation of the school system through "specific policies, decisions, and courses of action that extend into the future."   Dowell v. Bd. of Educ. of the Oklahoma City Public Schools, 8 F.3d 1501, 1513 (10th Cir. 1993) (citations omitted).

In addition to these constitutional standards, the Autauga County Board of Education also was required to comply with the contractual obligations of the 1997 consent order, which articulated detailed and specific steps the board was to take to achieve unitary status.   NAACP, Jacksonville Branch v. Duval County School, 273 F.3d 960 (11th Cir. 2001).   In the 1997 consent order, the parties agreed that the board would analyze and review programs and practices in a number of areas which required further actions.   The board was to formulate and adopt procedures

14

and practices designed specifically to address ongoing
concerns, including concerns with faculty and staff issues
and parity in curriculum.  The board was thus required to
take specific actions to address concerns the parties
contended were vestiges of the prior dual system to ensure
that the district was being operated in a nondiscriminatory
manner.

### B. Terms of the 1997 Consent Order and Compliance Efforts

**Faculty and Staff (Recruitment, Hiring, Promotion, Assignment)**:  The multi-pronged faculty and staff component
of the 1997 consent order required, among other things, that
the Autauga County Board of Education make every reasonable
effort to increase the pool of black applicants for faculty
and administrator vacancies by implementing a comprehensive
recruiting plan; conduct all hiring on a non-discriminatory
basis; and assign faculty and administrators in a way to
ensure that no school in the system could be perceived as a
white school or black school because of the racial

15

composition of its staff.  Since implementation of the consent order, the board has developed a comprehensive recruiting plan aimed at ensuring that applicant pools have a strong minority presence, and has revised its recruitment, application, and selection practices to ensure that these activities are conducted on a non-discriminatory basis.  The board participates in recruitment fairs at a number of Alabama universities, including several with predominately African-American enrollments, and efforts are made to ensure that African-Americans are among the district's recruiters. Interview panels consistently include African-American members, and over the past eight years, 24 % of the board's faculty hires have been African-American.  As for faculty assignment, all but one school in the district is within 6 % of the district-wide average, well within what has come to be known as the Singleton ratio, which essentially requires school districts that formerly operated a segregated system to ensure that the ethnic distribution of teachers in each school match, within a certain percentage, the ethnic distribution of teachers district-wide.  See Singleton v.

16

Jackson Mun. Separate Sch. Dist., 419 F.2d 1211 (5th Cir. 1969).  Although the eleventh school, Autaugaville, teeters on the outer limit of the Singleton ratio at 42 % African-American teachers, this is still within an acceptable range. Moreover, as a small school employing only 38 teachers, Autaugaville is susceptible to broader percentage swings by the movement of only one or two employees, and Autaugaville has been closer to the district-wide average in recent years (for instance, in the 2000-2001 school year, 32 % of the school's faculty were African-American).  Furthermore, as required by the mediation agreement, the board has filed regular personnel reports with the plaintiff parties, detailing recruitment, hires, retirements, and non-renewals, and the plaintiff parties have raised no objection to the district's operations.

Parity in Curriculum:  The 1997 consent order charged the board with ensuring that curricula among the district's various schools were substantially similar, and endeavoring "to address the underachievement of Autaugaville students." The 2004 mediation agreement identified specific

improvements.   Toward satisfying this element, the board implemented a daily tutoring program, expanded the SAT-10 examination tutorials, and continued a series of other programs at Autaugaville, including the Alabama Reading Initiative and the "At-Risk Plan."   Given that the true measure of any desegregation effort is its effectiveness, Davis v. School Comm'rs of Mobile County, 402 U.S. 33, 37, 91 S.Ct. 1289, 1292 (1971), the board's efforts at addressing the underachievement of Autaugaville students have been clearly successful.  Participation in the tutoring programs has been high; all 35 seniors at Autaugaville passed the high school graduation exam last year, Erin E. Mosely, Seniors leave no classmate behind, Montgomery Advertiser, May 21, 2004; and 100% of Autaugaville's kindergartners scored at or above grade level on the 2005 Dynamic Indicators of Basic Early Literacy Skills (DIBELS) exam.   Erin Elaine Mosely, Students' reading scores soar, Montgomery Advertiser, June 19, 2005.

Future Action:  The Autauga County Board of Education understands that the declaration of unitary status does not

18

relieve it of its responsibility to its faculty, its staff, its students, and the community it serves.  To this end, the board had adopted resolutions committing to the continuation of the district's compliance with the obligations necessary to maintain a unitary system of public education.

### C.  June 27, 2005, Fairness Hearing

After the board filed its motion for unitary status and termination of this litigation, the court required publication and notice of the proposal to declare the system unitary with respect to the remaining issues; scheduled a fairness hearing; and established procedures for filing comments and objections.  As stated, one written objection was filed with the court.

The court conducted a fairness hearing on June 27, 2005, heard testimony, and received evidence offered by the Autauga County Board of Education in support of the motion for unitary status in the area of student assignment.  The Superintendent of Education for the Autauga County School System testified concerning the school board's affirmative

19

efforts to comply with those parts of the consent order at issue, and the board's resolution to remain in compliance with the directives of the consent order in the future.  One witness, Doris Striggles, objected to the board's motion for unitary status.  Striggles contended that there were few African-American teachers at Billingsley School. Billingsley does have the lowest percentage of African-American teachers of any school in the district (16 %). However, the school district's personnel director testified that the board has struggled to increase the number of African American teachers at Billingsley because of its remote location in the county, and that the board has offered teaching positions to at least three African-American applicants in the last year only to be turned down. Moreover, the court notes that Billingsley is only 6 % below the district-wide average for African-American teachers, which is well within an acceptable range.

As stated, there was one written objection.  Reverend Lee D. Kimbrough described several instances of what he believed to be discrimination in employment.  It suffices to

note that there is no evidence that either Reverend
Kimbrough or the alleged victims of race discrimination have
attempted to raise any of their complaints through the
school system's grievance procedures, sought to intervene in
this action, filed a separate civil action, or filed a
charge of discrimination with the Equal Employment
Opportunities Commission.   Reverend Kimbrough does not
adequately identify any systemic violation of any
outstanding order so as to controvert the evidence of the
defendants' substantial compliance.  If a teacher or other
staff member has a viable claim (an issue the court declines
to address here), he or she may pursue that claim through a
separate action.  Title VII of the Civil Rights Act of 1964,
as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e-17,
and the Civil Rights Act of 1866, 42 U.S.C.A. § 1981,
provide adequate avenues for full and immediate redress.

Insofar as Reverend Kimbrough argues that the presence
of the court is needed to assure that the school system
operates within the confines of the law, the court addresses
his concern by adopting, with modification, comments it

21

expressed in a then-long-standing case involving gender discrimination in a law-enforcement agency: "To be sure, the [Autauga County School System] will probably be the object of future lawsuits charging [race] discrimination, and some of these lawsuits may even be found to have merit. But this court does not sit to prevent all future wrongdoing; a [school system], like all governmental entities, is made up of humans, and the [system] simply cannot assure that its employees will never do wrong, that they will never engage in [race] discrimination in the future. Indeed, even under the continued eye of the court, there can be no absolute assurance that a supervisor or a co-worker will not engage in [race] discrimination. What the [school system] can do, and has done here, is to take reasonable steps to decrease the likelihood of such discriminatory conduct in the future. Thus, the mere fact that there may be impermissible discrimination in the future does not, by itself, warrant the continued assumption of court control over a governmental entity for past

misconduct."  <u>Jordan v. Wilson</u>, 951 F.Supp. 1571, 1582-83
(M.D. Ala. 1996).


## III.  CONCLUSION

On the basis of the record evidence, witness testimony,
and averments of counsel, the court finds that the Autauga
County Board of Education and its members and superintendent
have met the standards entitling the school district to a
declaration of unitary status and termination of this
litigation.  The board has fully and satisfactorily complied
with the orders of this court, and the vestiges of the prior
<u>de jure</u> segregated school system have been eliminated to the
extent practicable.  The court also finds that the board and
its members and superintendent have demonstrated a good-
faith commitment to the whole of the court's decrees and to
those provisions of the law and the Constitution that were
the predicate for judicial intervention in this school
system in the first instance.  The court finds that the
board and its members and superintendent have demonstrated
their good-faith commitment through their compliance with

the court's orders over the years, through their good-faith implementation of their contractual obligations under the 1997 consent order, and through their adoption of specific policies and actions that extend into the future demonstrating their commitment to the operation of a school system in compliance with the Constitution.

The plaintiff parties have succeeded in the task they began decades ago to seek the end of the seemingly immovable de jure system of school segregation in Autauga County. This lawsuit sought to bring the district into compliance with the constitutional requirement of equal protection under the law, and the court states today that they have succeeded.   NAACP, Jacksonville Branch v. Duval County School, 273 F.3d 960, 976 (11th Cir. 2001).  By its actions today, the court recognizes and congratulates the sustained efforts of the parties.  In so doing, the court notes, as the Eleventh Circuit stated in Duval County School, that "[t]he Board, and the people of [Autauga County] who, in the end, govern their school system, must be aware that the door through which they leave the courthouse is not locked behind

them.  They will undoubtedly find that this is so if they fail to maintain the unitary system [the court] conclude[s] exists today."  Id. at 976-77.

Therefore, with the judgment the court will enter today, control over the Autauga County School System is properly returned to the Autauga County Board of Education and its members and superintendent.  The motion for declaration of unitary status and termination of this litigation filed by the board and its members and superintendent will be granted, all outstanding orders and injunctions will be dissolved, and this litigation dismissed as to the board and its members and superintendent.  However, as outlined in this court's October 19, 2004, opinion and judgment, Lee v. Autauga County Bd. of Educ., 2004 WL 2359667, at *6-7 (M.D. Ala. 2004), declaring the school system unitary in the area of student assignment, the court retains jurisdiction until October 19, 2012, for the limited purpose of enforcing the contractual obligations set forth in the revised settlement agreement regarding student assignment, and the state defendants are not dismissed, and the orders dealing with

the statewide "special education" and "facilities" issues are not dissolved.

DONE, this the 19th day of July, 2005.

_____ /s/ Myron H. Thompson _____
UNITED STATES DISTRICT JUDGE